COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP937**

Cir. Ct. No. **2018CV2154**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

JOAN SCALCUCCI AND RICK SCALCUCCI,

   PLAINTIFFS-APPELLANTS,

UNITED HEALTHCARE INSURANCE COMPANY,

   INVOLUNTARY-PLAINTIFF,

   V.

COUNTY OF DANE AND CITY OF MADISON,

   DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Joan and Rick Scalcucci appeal a summary judgment order dismissing their personal injury suit against the City of Madison and the County of Dane (collectively, "the Municipalities"). We conclude that the Municipalities are immune from suit under WIS. STAT. § 893.80(4) (2019-20).[1] We further conclude that the circuit court did not erroneously exercise its discretion by not permitting the Scalcuccis to amend their pleadings. Accordingly, we affirm.

## BACKGROUND

¶2      The material facts are not in dispute for purposes of this appeal. Joan Scalcucci injured her ankle after tripping on a sidewalk in the City of Madison in front of the Dane County Public Safety Building. Joan tripped because there was an approximate 1¼ - 1½ inch offset, or height difference, between two adjoining slabs of pavement. The City owns one slab and the County owns the other.

¶3      The Scalcuccis sued the Municipalities and their respective insurers, alleging negligence and violations of the safe-place statute, WIS. STAT. § 101.11. Rick Scalcucci, Joan's husband, also brought derivative claims for loss of services, society, companionship, and consortium.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 The Municipalities filed separate motions for summary judgment, which we discuss collectively. As relevant here, the Municipalities argued that they are immune from suit under the governmental immunity statute, WIS. STAT. § 893.80(4), and that no exceptions to immunity apply.[2] *See **Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶24, 253 Wis. 2d 323, 646 N.W.2d 314. The circuit court agreed and dismissed the Scalcuccis' suit in full, and this appeal follows. We will discuss additional facts below as necessary.

## DISCUSSION

*Standard of Review and Background Principles of Law*

¶5 Summary judgment is appropriate where the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). Summary judgment "is designed to eliminate unnecessary trials" where "there is no triable issue of fact" to present to a jury. ***Maynard v. Port Publ'ns, Inc.***, 98 Wis. 2d 555, 562, 297 N.W.2d 500 (1980). However, when a defendant is entitled to governmental immunity, then summary judgment may be appropriate even if there is a factual dispute as to negligence. ***Lodl***, 253 Wis. 2d 323, ¶16. The court "assumes negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies."

---

[2] Because we conclude that the Municipalities are immune from suit under WIS. STAT. § 893.80(4), we do not consider the Municipalities' other arguments, namely: the applicability of the safe-place statute, whether the Municipalities are entitled to recreational immunity, and whether either or both municipalities were in fact negligent.

3

*Id.*, ¶17.  The "application of the immunity statute and its exceptions … is a question of law." *Id.*

¶6      As pertinent here, WIS. STAT. § 893.80(4) immunizes a municipality from liability for any act "done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions," a phrase our supreme court has interpreted to mean "any act that involves the exercise of discretion and judgment."  *See Lodl*, 253 Wis. 2d 323, ¶21.  To bring suit against a municipality, one of four judicially recognized exceptions to immunity must apply.  *See id.*, ¶24.

¶7      The Scalcuccis argue that the "ministerial duty" and "known danger" exceptions apply.  These exceptions stem from the same premise:  "that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter."  *Id.*, ¶25; *see also Engelhardt v. City of New Berlin*, 2019 WI 2, ¶31, 385 Wis. 2d 86, 921 N.W.2d 714 (these exceptions "overlap to an extent, inasmuch as they both require the identification of a ministerial duty" (internal quotation marks and quoted source omitted)).  Generally speaking, a ministerial duty is a duty that is so "absolute" and "certain" that the municipality is without discretion *not* to take some action.  *Lodl*, 253 Wis. 2d 323, ¶25 (internal quotation marks and quoted source omitted).

¶8      Specifically, under the ministerial duty exception, the duty to act arises out of the law.  That is, no immunity exists where the duty "is absolute, certain, and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.* (citing *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).  "'Law' in this context means, at a minimum, an act of

government," and "includes statutes, administrative rules, policies or orders." ***Meyers v. Schultz***, 2004 WI App 234, ¶19, 277 Wis. 2d 845, 690 N.W.2d 873 (internal quotation marks and quoted source omitted).

¶9      The known danger exception applies "where a danger is known and of such quality" that the municipality's duty to act *becomes* "absolute, certain and imperative," even in the absence of some law directing its actions.  ***Lodl***, 253 Wis. 2d 323, ¶34 (internal quotation marks and quoted source omitted); *see also* ***Engelhardt***, 385 Wis. 2d 86, ¶5 ("The known danger exception … applies when an obviously hazardous situation known to the public officer or employee is of such force that a ministerial duty to correct the situation is created." (footnote omitted)).  Thus, the known-danger inquiry involves a three-step test:

> First, something must occur to create a compelling danger; second, a governmental actor must find out about the compelling danger; and third, the governmental actor either takes or fails to take precautionary measures.  If the government does not take precautionary measures, the known and compelling danger exception applies.

***Knoke v. City of Monroe***, 2021 WI App 6, ¶50, 395 Wis. 2d 551, 953 N.W.2d 889 (citations omitted).  There is no bright line for determining a known danger, but our case law establishes that the hazard must be readily apparent and "nearly certain to cause injury if not corrected"—i.e., an "accident waiting to happen." ***Engelhardt***, 385 Wis. 2d 86, ¶¶44, 52 (internal quotation marks and quoted sources omitted); *see also **id.***, ¶¶36-52 (discussing cases).

*Application to the Scalcuccis' Appeal*

A.  The ministerial duty exception does not apply.

¶10      As noted, the Scalcuccis seek damages from the Municipalities for injuries that Joan sustained when she tripped on the 1¼ - 1½ sidewalk offset

between two slabs of pavement (one slab owned by the City and the other by the County). To establish the ministerial duty exception to governmental immunity, the Scalcuccis must point to some law or act of government that "imposes, prescribes and defines the time, mode and occasion for [fixing this defect] with such certainty that nothing remains for judgment or discretion." *See **Lodl***, 253 Wis. 2d 323, ¶25 (internal quotation marks and quoted source omitted).

¶11 The Scalcuccis identify several laws or policies, but we conclude that none of them establish a ministerial duty. First, the Scalcuccis direct us to WIS. STAT. § 66.0907, the statute governing town and village sidewalks, and to the Madison Ordinance adopting that statute. *See* MADISON, WIS., CODE OF ORDINANCES § 10.09 (2021). Specifically, the Scalcuccis reference § 66.0907(1), which states, "Streets shall provide a right-of-way for vehicular traffic and, where the council requires, a sidewalk on either or both sides of the street." But this provision, and the statute generally, do not prescribe any duty or set forth any specific tasks a municipality must undertake to fix uneven sidewalks.

¶12 Second, the Scalcuccis point to an August 11, 2001 "Administrative Procedure" of the City of Madison Engineering Division, titled, "Criteria for the Replacement of Public Sidewalk and Curb and Gutter." The Scalcuccis refer to a directive in that document stating, "sidewalk sections that contain offsets of ¾ inch or greater" shall be replaced. The Administrative Procedure, however, states that it pertains to "lots in plats and Certified Survey Maps *that have been recorded [more than] four years [before] the request for the Conditional Occupancy Permit*." (Emphasis added.) The Scalcuccis have not explained how this condition applies to the property where Joan was injured. In any event, this document does not set forth "the time, mode and occasion [for replacing an offset sidewalk] with such certainty that nothing remains for judgment or discretion."

*See Lodl*, 253 Wis. 2d 323, ¶25; *see also Yao v. Chapman*, 2005 WI App 200, ¶29, 287 Wis. 2d 445, 705 N.W.2d 272 ("[F]or a duty to be ministerial, a public officer must be not only bound to act, but also bound by law to act in a very particular way.").

¶13     Third, the Scalcuccis rely on a pamphlet for property owners outlining the City's "Annual Sidewalk Repair and Rehabilitation Program."  We will assume, based on relevant deposition testimony, that this is an official City program or policy.  The pamphlet, however, states that, although the sidewalk repair program "is designed to bring defective sidewalk up to current standards," this "**does not mean all sidewalk will be replaced**."  By its terms, then, the program allows for the exercise of judgment and discretion in when and how to bring a defective sidewalk up to current standards, and thus cannot create a ministerial duty as a matter of law.  *See Lodl*, 253 Wis. 2d 323, ¶25.

¶14     Fourth, the Scalcuccis refer us to a 2010 United States Department of Justice (DOJ) publication.  This publication states that federal regulations for implementing the Americans with Disability Act (ADA) were revised to adopt "the 2010 ADA Standards for Accessible Design."  Per the DOJ publication, the ADA Standards do not permit vertical changes in floor or ground level above ¼ inch.  The DOJ publication, however, states that the revised regulations only apply to governmental facilities designed or altered after March 15, 2012.  The undisputed facts establish that the building and sidewalk were built in 1993, and the Scalcuccis do not assert that the sidewalk on which Joan tripped was altered after March 15, 2012.  Thus, we cannot conclude that the ADA Standards or the federal regulations create a ministerial duty to fix the sidewalk offset.

¶15    The Scalcuccis also appear to suggest that there is a ministerial duty to maintain sidewalks under WIS. STAT. § 893.83, which, they assert, "incorporate[s]" a former statute, WIS. STAT. § 81.15 (2001-02). Under this former statute, an individual could sue municipalities for damages for injuries caused by the "insufficiency or want of repairs of any highway" (with the term "highway" construed to include sidewalks). *See* WIS. STAT. § 81.15 (2001-02), renumbered WIS. STAT. § 893.83(1) and amended by 2003 Wis. Act 214, § 136; *see also **Webster v. Klug & Smith***, 81 Wis. 2d 334, 260 N.W.2d 686 (1978) (the term "highway" in § 81.15 encompasses sidewalks). However, this statute has been repealed. *See* 2011 Wis. Act 132, § 2; *see also **Langenhahn v. West Bend Mut. Ins. Co.***, 2019 WI App 11, ¶22, 386 Wis. 2d 243, 926 N.W.2d 210 ("WIS. STAT. § 81.15 … and its provisions relating to municipal liability for negligent highway or sidewalk maintenance have been repealed."). Section 893.83 in its current form provides:

> No action may be maintained against a city, village, town, or county to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks. Any action to recover damages for injuries sustained by reason of an accumulation of snow or ice that has existed for 3 weeks or more upon any bridge or highway is subject to [WIS. STAT. §] 893.80 [the governmental immunity statute].

It is clear that this provision does not create any general cause of action for sidewalk or highway repair, much less a ministerial duty for municipalities to maintain sidewalks. That is, it does not "prescribe[] and define[] the time, mode and occasion for" performing the "specific task" of sidewalk maintenance "with

such certainty that nothing remains for judgment or discretion." *See Lodl*, 253 Wis. 2d 323, ¶25 (internal quotation marks and quoted source omitted).[3]

¶16 The Scalcuccis further point to a number of cases purportedly establishing a municipality's duty to fix sidewalks. However, most of these cases have been abrogated or limited by case law.[4] The remaining cases the Scalcuccis cite are inapposite because they concern claims not alleged or present here.[5]

---

[3] Accordingly, the case law the Scalcuccis cite in support of this argument is also inapplicable, as these cases rely on WIS. STAT. § 81.15 (2001-02) as the source of a cause of action for insufficiency or want of highway repairs. *See Bystery v. Village of Sauk City*, 146 Wis. 2d 247, 251-53, 430 N.W.2d 611 (Ct. App. 1988); *Hales v. City of Wauwatosa*, 275 Wis. 445, 447-48, 82 N.W.2d 301 (1957).

[4] In *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 37, 39-40, 115 N.W.2d 618 (1962), our supreme court abrogated common-law governmental immunity but provided a then-narrow exception: "This decision is not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." Our legislature codified this exception the following year in what is now WIS. STAT. § 893.80(4). *See* 1963 Wis. Laws, ch. 198; *Knoke v. City of Monroe*, 2021 WI App 6, ¶17 & n.3, 395 Wis. 2d 551, 953 N.W.2d 889. In the decades that followed, our courts came to define this statutory exception to immunity as encompassing "any act that involves the exercise of discretion and judgment." *See Lodl*, 253 Wis. 2d 323, ¶21. Thus, some have posited that immunity is again the rule and liability the exception, meaning that a plaintiff attempting to bring suit against a municipality must show that a recognized immunity exception applies. *See id.*, ¶24; *see also Engelhardt*, 385 Wis. 2d 86, ¶70 (Dallet, J., concurring) (the result of post-*Holytz* jurisprudence "conditioning immunity on the performance of discretionary acts has been a return to governmental immunity as the rule and liability as the exception"). Therefore, the following cases, to which the Scalcuccis cite, are no longer applicable under modern immunity jurisprudence because they rely on a common-law duty to maintain sidewalks *without* the requirement that the plaintiff establish an exception to governmental immunity: *Kobelinski v. Milwaukee & Suburban Transport Corp.*, 56 Wis. 2d 504, 510-513, 202 N.W.2d 415 (1972); *Stippich v. City of Milwaukee*, 34 Wis. 2d 260, 270, 149 N.W.2d 618 (1967); *Westler v. City of Milwaukee*, 34 Wis. 2d 272, 275-76, 149 N.W.2d 624 (1967).

The Scalcuccis further cite *Naker v. Town of Trenton*, 62 Wis. 2d 654, 215 N.W.2d 38, *aff'd on reh'g*, 62 Wis. 2d 654, 660a, 217 N.W.2d 665 (1974), in which our supreme court held that "the doctrine of *Holytz* … imposes liability for want of ordinary care" for failure to properly maintain a traffic sign. We recognize that a relatively recent supreme court case, *Bostco LLC v. Milwaukee Metropolitan Sewerage District*, 2013 WI 78, ¶50, 350 Wis. 2d 554, 835 N.W.2d 160, cites this portion of *Naker* with approval. However, given the development of immunity jurisprudence in the years following *Naker*, we cannot conclude that *Naker* stands for the blanket

(continued)

9

¶17    In sum, we conclude that the ministerial duty exception to governmental immunity does not apply.

B.  The known danger exception does not apply.

¶18    The Scalcuccis argue that the sidewalk offset constitutes a known danger, such that the Municipalities had a ministerial duty to fix this hazard.  *See Engelhardt*, 385 Wis. 2d 86, ¶54.  We disagree.  We assume, for purposes of our analysis, that the Municipalities knew of the sidewalk offset.  Even so, controlling case law establishes that, for this exception to apply, there must be an "immediate, compelling, and self-evident" danger, *see id.*, ¶54—essentially, "an accident waiting to happen," *id.*, ¶52 (internal quotation marks and quoted source omitted). *See also American Fam. Mut. Ins. Co. v. Outagamie County*, 2012 WI App 60, ¶26, 341 Wis. 2d 413, 816 N.W.2d 340 ("The known danger exception does not apply whenever a dangerous situation exists.  Instead, the exception is reserved for situations that are more than unsafe, where the danger is so severe and immediate that a specific and immediate response is required." (citation omitted)).

¶19    Given this case law, we cannot conclude that the 1¼ - 1½ inch offset between two slabs of pavement constitutes a danger so severe that immediate and

proposition that municipalities have a related duty of ordinary care to maintain sidewalks, absent a law imposing a ministerial duty to do so.  Nor do the Scalcuccis argue as much; instead, they cite *Naker* in passing, for the idea that "a traffic sign once erected has to be maintained, or liability may follow."  We conclude that *Naker* does not control the outcome of this case.

⁵ For example, liability in *Bostco* and *Milwaukee Metropolitan Sewerage District* was premised on the defendant's maintenance of a nuisance, a cause of action that, as we discuss in the final section of this opinion, the Scalcuccis did not allege in the circuit court.  *See Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶¶3-4, 350 Wis. 2d 554, 835 N.W.2d 160; *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶¶59-62, 277 Wis. 2d 635, 691 N.W.2d 658.

specific remedial action was required, particularly when we compare this potential danger to those circumstances that courts *have* determined to be a known danger. In *Cords v. Anderson*, 80 Wis. 2d 525, 538, 542, 259 N.W.2d 672 (1977), for example, a park trail passing inches from a ninety-foot gorge, containing no posted warning signs, and known to be particularly dangerous at night was found to create a ministerial duty to warn hikers of this "obvious danger." Thus, the manager of a state-owned natural area could be held liable for injuries hikers sustained when they fell into the gorge. *Id.* at 538-42; *see also Heuser ex rel. Jacobs v. Community Ins. Corp.*, 2009 WI App 151, ¶¶2-7, 13, 321 Wis. 2d 729, 774 N.W.2d 653 (students' use of scalpels for dissection constituted a known danger, where their teacher knew that there had been previous injuries from scalpel use, did not instruct the students on scalpel use, and did not sufficiently warn the students of the danger); *Engelhardt*, 385 Wis. 2d 86, ¶¶14-15, 54-55 (known danger existed where child known to be unable to swim was left unsupervised at a busy water park). Rather, the offset is more like the hazard in *Knoke*, 395 Wis. 2d 551, ¶¶54-56, in which we concluded that snow and ice accumulation on the side of a street was not severe, immediate, and uncommon enough to constitute a known danger.

¶20 Accordingly, the Scalcuccis' suit cannot proceed under the known danger exception to governmental immunity.

C. <u>The circuit court did not erroneously exercise its discretion in not permitting the Scalcuccis to amend their complaint to raise nuisance claims.</u>

¶21 We construe the Scalcuccis to argue that the circuit court erroneously exercised its discretion in not permitting them to amend their complaint to raise a nuisance claim. *See Finley v. Culligan*, 201 Wis. 2d 611, 626, 548 N.W.2d 845 (Ct. App. 1996) (circuit court's decision to grant leave to

amend a complaint is discretionary). However, the record reflects that the Scalcuccis never separately moved to amend their complaint. Instead, the Scalcuccis merely stated, in one of their summary judgment responses,

> It should be noted that some cases have held that what actually has occurred is that a private nuisance has been established. If the Court is of the belief that this is the manner in which the case is best framed, then the plaintiffs make a motion to be allowed to amend their complaint to make a claim against Dane County for creating and/or continuing a[] nuisance, which they had a duty to repair.

Moreover, at the summary judgment hearing, when the circuit court asked the parties if they had any additional arguments, the Scalcuccis did not mention a nuisance claim, much less orally move to amend their complaint to add this claim.

¶22     A single conditional statement in the Scalcuccis' summary judgment response—which delegates the decision to amend to the circuit court, based on its own judgment as to how the case is "best framed" in the course of deciding motions for summary judgment—does not constitute a motion, or even a request, to amend. In short, we cannot conclude that the circuit court erroneously exercised its discretion in not amending the Scalcuccis' complaint based on this statement.

## CONCLUSION

¶23     For the reasons stated, we affirm the summary judgment order dismissing all claims against the Municipalities.[6]

---

[6] In the Scalcuccis' brief-in-chief, counsel acknowledges that unpublished per curiam decisions cannot be cited for their precedential value, but then proceeds to rely heavily on one such decision. *See* WIS. STAT. RULE 809.23(3). We remind counsel that such citation is improper and is grounds for sanction. *See* WIS. STAT. RULE 809.83(2).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.